RAYMOND CECIL, ADMINISTRATOR OF THE ESTATE OF LARRY STEPHEN CECIL, v. HIGH POINT, THOMASVILLE AND DENTON RAILROAD.

(Filed 1 March, 1967.)

1. **Railroads § 5—**

G.S. 136-20, giving the Highway Commission exclusive jurisdiction to require gates, alarm signals or other approved safety devices to be installed at railroad crossings does not include signs and notices of the existence of a crossing, and does not relieve a railroad company of the duty to give users of the highway adequate notice and warning of the existence of a grade crossing, even though it be one at which the Highway Commission has not required the erection of gates, gongs or signaling devices.

2. **Same—**

In an action to recover for wrongful death of a motorist killed in a railroad grade crossing accident, plaintiff may properly allege, after averring that the crossing was obstructed so that a train or its lights were not visible to a driver along a highway until he was within 75 feet of the crossing, that the railroad company maintained only one small crossing sign which was insufficient to give notice to a motorist of his approach to the crossing, and that the railroad company was negligent in failing to erect and maintain warning devices or signs commensurate with the dangerous nature of the crossing, and order striking such allegations is reversed.

ON *Certiorari* to review an Order of *Crissman, J.,* dated 15 June, 1966, entered at the Special Civil Session of GUILFORD County Superior Court, docketed and argued at Fall Term, 1966 as No. 685.

This case was here in 1965, and is now before us upon plaintiff's

CECIL *v.* R. R.

exception to Judge Crissman's Order striking paragraphs 5 and 7 of the amended complaint.

The plaintiff alleges that his intestate, while driving his car at a grade crossing, was struck by defendant's train, causing his death.

He describes the highway approaching the crossing as down grade, bordered on both sides by banks, dense woods and undergrowth, so that a train or its lights are not visible to a driver until he is approximately 75 feet from the crossing.

The stricken paragraphs are as follows:

"5. At no time herein complained of was there any warning device of any nature or description whatsoever at said crossing designed to warn northbound motorists of the approach of a train. And, furthermore, there was no warning device of any nature or description designed to apprise northbound traffic of even the presence of defendant's tracks, with the exception of one small, round, yellow crossing sign located on the right or east shoulder of the road, approximately 338 feet south of the crossing, which sign gave no notice of the approach of any train and inadequate notice of even the presence of defendant's tracks.

"7. Defendant Railroad was advised of and knew, or in the exercise of reasonable care should have known of the conditions at and the nature of the subject grade crossing, and more particularly the total absence of any warning device of any nature or description designed to warn northbound motorists of the approach of a train or even the presence of the tracks, with the exception of the said one small crossing sign. Notwithstanding said conditions, defendant failed to erect any warning devices at said crossing to give the traveling public, and more particularly plaintiff's intestate, such advance notice of the approach of its trains to the crossing or of the presence of its tracks as would permit the motorist, and more particularly plaintiff's intestate, to bring his vehicle to a safe and timely halt before reaching the tracks. Plaintiff's intestate's death was due to, caused and occasioned by and followed as a direct and proximate result of the negligent and unlawful failure of defendant Railroad to erect and maintain warning devices, such as cross-arm signs, bells, flashing signals, sirens or watchmen, commensurate with the aforesaid nature of and conditions at said grade crossing."

Plaintiff appeals.

*Schoch, Schoch & Schoch for plaintiff appellant.*
*Lovelace, Hardin & Bain for defendant appellee.*
*Craige, Brawley, Lucas & Horton, Maupin, Taylor & Ellis,*

*Simms & Simms, Poisson & Barnhill, Joyner & Howison, Amici Curiæ.*

PLESS, J. In the previous decision in this case, 266 N.C. 728, 147 S.E. 2d 223, we dismissed the appeal of the plaintiff. In that action the lower court struck out a portion of the complaint in which it was alleged that the Railroad had been notified and warned that there were insufficient warning devices for said crossing and that it had negligently failed to erect any warning devices commensurate with the ultra hazardous character of the crossing. In dismissing the appeal we noted that plaintiff, if so advised, could move to amend his complaint so as to allege additional facts.

The amendment elaborates upon the former allegations and adds details — which we must construe literally. Upon the present question we cannot consider omissions or incomplete descriptions.

The plaintiff's position is succinctly stated in his brief: He "respectfully requests that the court reverse its interpretation of G.S. Sec. 136-20 as set forth in *Southern Railway v. Akers Motor Lines,* 242 N.C. 676 (1955) (hereinafter referred to as '*Akers*'). Appellant concedes that should the court fail to reverse the position taken in *Akers,* the judgment should be affirmed."

G.S. 136-20 is a lengthy statute entitled: "Elimination or Safeguarding of Grade Crossings and Inadequate Underpasses or Overpasses." Section B contains a provision that when the State Highway Commission shall determine that a crossing is dangerous to public safety that it may "in its discretion order said railroad company to install and maintain gates, alarm signals or other approved safety devices if and when in the opinion of the said Commission * * * the public safety and convenience will be secured thereby." Another section: (F) "The jurisdiction over and control of said grade crossings and safety devices upon the State Highway system herein given the Commission shall be exclusive."

The plaintiff does not allege that the Commission has ordered any kind of signal nor safety device at the crossing in question and, of course, does not allege any failure of the railroad company to comply with the orders of the Commission. The gravamen of the amended complaint is that, even in the absence of an order by the Commission, the Railroad was negligent in not installing signals and other devices because of the dangerous nature of the crossing. The court interpreted this statute in the *Akers* case, *supra.*

In that case the Railroad sued the Akers Motors Lines to recover for damages to its train when struck by a tractor-trailer owned by the defendant at a grade crossing. The alleged negligence of the defendant was in failing to keep a proper lookout, failure to

see the train approaching, etc. Akers denied its negligence and set up a cross-action in which it alleged that the Railroad was negligent in failing to maintain gates, gongs, or other safety devices at the crossing which the Railroad should have known to be dangerous. The jury upheld the defendant's cross-action and awarded damages against the Railroad and the plaintiff appealed.

In reversing the judgment against the Railroad, the Court said: "The defendants relied upon the failure to maintain gates or gongs or other like signaling devices at the crossing as evidence of its negligence. The court instructed the jury as to defendants' contentions in respect thereto and undertook to state the applicable law. This must be held for reversible error committed on the first issue as to the negligence of the defendants for the reason the court overlooked and failed to make reference to the provisions of G.S. 136-20. By the enactment of this section of the Code the Legislature has taken from the railroads authority to erect gates or gongs or other like signaling devices at railroad crossings at will and has vested exclusive discretionary authority in the State Highway and Public Works Commission to determine when and under what conditions such signaling devices are to be erected and maintained by railroad companies."

It will be noted that the statute refers only to gates, alarm signals or other approved safety devices in Section B. In Section F it refers only to "grade crossings and safety devices".

The *Akers* decision refers to "gates or gongs or other like signaling devices at the crossing", and says that, "The Legislature has taken from the railroads authority to erect gates or gongs or other like signaling devices."

In *State Highway Commission v. Clinchfield Railroad Company*, 260 N.C. 274, 132 S.E. 2d 595, the Highway Commission ordered the railroad to widen a crossing at its expense, the Superior Court upheld the Commission's order, and upon consideration by this Court of Clinchfield's appeal it was held that G.S. 136-20 was not applicable, the Court saying: "Careful consideration impels the conclusion G.S. 136-20 applies only to a factual situation for which provision is made, namely, the construction of an underpass or overpass or the installation and maintenance of gates, alarm signals or other safety devices."

Unless we are to interpret the phrase "safety devices" and "signalling devices" as including signs and notices of the existence of the crossing, G.S. 136-20 is not applicable here. We find nothing in either of the cases referred to above to justify that interpretation, and it is obvious that if the Legislature so intended it could easily

have added phrases such as "notices and signs" that would have avoided any question.

In *Cox v. Gallamore*, 267 N.C. 537, 148 S.E. 2d 616, Justice Lake, speaking for the Court, said: "G.S. 136-20, which empowers the State Highway Commission, under certain circumstances, to require a railroad company to install gates, alarm signals or other safety devices at a crossing, does not relieve the railroad from its common law duty to give users of a highway adequate warning of the existence of a grade crossing at which the Commission has not required such devices to be installed. *Highway Commission v. R. R.*, 260 N.C. 274, 132 S.E. 2d 595."

It is, therefore, apparent that in none of the cases above referred to has G.S. 136-20 been construed to place sole responsibility upon the Highway Commission to require notices and signs of the existence of a railroad crossing, nor to relieve the railroads of the duty referred to above.

In *Cox v. Gallamore, supra*, we approve the following language from 44 Am. Jur. Railroads, § 528: "* * * but the (railroad) company may, by its omission of some duties, subject itself to a liability for injury to one ignorant of a crossing, where it would not be liable if he knew thereof. One of these is the duty to give appropriate warning to persons using the highway of the presence of railroad crossings. The manner in which this duty shall be discharged varies according to the circumstances and surroundings, and ordinarily it is a question for the jury whether the duty in a particular case has been sufficiently performed. This is usually done by means of sign boards at or near the crossing indicating the presence of the crossing, and these are frequently required by statute."

"A traveler on a highway is not required to use ordinary care to learn whether or not a crossing is unusually dangerous, and the duty to employ all his senses to ascertain whether it is safe to cross a railroad does not exist until the traveler has knowledge or by the exercise of reasonable care should have had knowledge of the existence of the crossing." 75 C.J.S., Railroads § 768.

With that knowledge, he must remember that it is always train time at a railroad crossing — and the train has the right-of-way. Motorists must recognize that the tracks constitute a deadly warning that a train may be coming and that they must protect themselves by diligently using their senses for self-preservation.

The plaintiff's allegation that the only device warning of the presence of a railroad track was a "small, round, yellow crossing sign * * * 338 feet south of the crossing" and that the tracks are not visible to traffic * * * until the driver is approximately 75

feet from the tracks, brings him within the *Cox* case insofar as the pleadings are concerned. We are dealing only with them — not the merits. If additional signs, or one different from the one described, or knowledge of the crossing by the deceased should later appear a different result would conceivably arise.

The provisions of the two paragraphs under consideration in which the absence of adequate notice of the existence of the crossing is alleged is proper, and G.S. 136-20 has no bearing upon that feature of the questioned pleadings.

The other features of the pleadings alleging that there was no warning device of any nature to warn motorists of the approach of a train, and complaining of the "unlawful failure of the defendant railroad to erect and maintain warning devices such as crossarms, signs, bells, flashing signals, sirens or watchmen commensurate with the aforesaid nature and conditions at said grade crossing" are permissible at the present stage of the proceedings, since we are considering only the two paragraphs of the complaint under attack. Later developments may require answers to questions that have not yet been properly presented.

It is not necessary that the *Akers* case be reversed or modified at this time in view of this decision, and we express no opinion with reference thereto. The ruling of the lower court in striking the questioned pleadings is

Reversed.